**Trott v. Naples**

C.P. of Lawrence County, No. 11278 of 2005 CA

*Douglas J. Olcott*, for plaintiff.
*Mark A. Martini*, for defendant.

PICCONE, *J.*, Sept. 8, 2014—This court issues the instant order of court and opinion pursuant to Pa.R.A.P. 1925(a) in support of the order of court dated June 27, 2014, which denied the plaintiff's motion for post trial relief. In accordance with this court's order dated July 8, 2014, the plaintiff filed a timely Concise Statement of Matters Complained of on Appeal. The plaintiff raises the following assignments of error: (1) "The court erred in failing to grant plaintiff's motion for directed verdict on the issue of statutory employer because defendants Lear and Anthony failed to produce evidence to overcome the presumption, set forth by the Pennsylvania Supreme Court's decision in *Mature v. Angelo*, 97 A.2d 59, 60 (Pa. 1953), that Anthony Naples remained an employee of Lear, LLC, where, as here, Lear LLC, was in the business of renting out cranes and furnished an operator, such as Anthony Naples, as part of its daily rental agreement; (2) the court erred in charging the jury regarding the six-foot OSHA Fall Protection Requirement set forth in 29 C.F.R. § 1926.501 and failing to charge the jury on the fifteen-foot OSHA Fall Protection Requirement set forth in 29 C.F.R. § 1926.76 or at the very least, should have charged both OSHA regulations in accordance with the Superior Court's holding in *Ettinger v. Triangle-Pacific Corporation*, 799 A.2d 95 (Pa. Super. 2002)[,] since the parties disputed whether or not plaintiff Brandon Trott was engaged in steel erection activity at the time of this accident." (arbitrary internal capitalization omitted). For the reasoning set forth herein, the plaintiffs appeal should

be denied.

This matter arises out of an accident occurring on November 3, 2003 at Neshannock Elementary School in New Castle, Lawrence County, Pennsylvania. The plaintiff, Brandon Trott (hereinafter, the "plaintiff"), was employed as an ironworker for Sheraden Steel. At the time of the accident, the plaintiff was working on a construction site at Neshannock Elementary School (hereinafter, the "job site"). For the purpose of steel erection in connection with the project, Sheraden Steel rented a crane and crane operator from the defendant, Lear, LLC, (hereinafter, "defendant Lear"). Defendant Lear sent defendant, Anthony Naples (hereinafter, "defendant Naples"),[1] to operate the 50-ton TMS475 crane at the Neshannock job site.

On the morning of November 3, 2003, defendant Naples, the plaintiff, and other members of the construction crew were conducting steel erection activities on the rear of the building. Also an ironworker, Mr. Willard Ensminger (hereinafter, "Ensminger") was the foreman on the job site. Ensminger was responsible, *inter alia*, for controlling the work to be completed and, in some instances, the manner in which the work was to be performed. Defendant Naples described Ensminger to be "the boss."

Later, Ensminger decided to move the construction to the front of the building. Defendant Naples then drove the crane to the front of the building. While defendant Naples was driving the crane to the front, the jib extension, which is also called the lattice boom extension, was positioned

---

1. Defendant Naples died on July 8, 2014, which is reflected in the notice of death filed by the defendants' counsel on July 24, 2014.

to the side of the crane. Once in position, the jib extension had to be swung around the crane to the front in order for the ironworkers to reach interior areas of the building. In order to do so, four pins that were holding the jib extension in place on the side of the crane had to be removed. The pins had to be removed and inserted manually; however, conflicting testimony was presented regarding the permissible and prohibited manners of doing so. The plaintiff first climbed onto the side of the crane to remove the pins, and the jib extension swung to the front of the crane.[2] The pins then had to be reinserted to stabilize the jib extension so it could safely move the steel beams. The plaintiff then climbed onto the boom and walked toward the head of the jib extension. Conflicting testimony was presented regarding whether the boom moved in any way; nevertheless, the plaintiff suddenly fell off the left side of the boom and landed head-first onto his wrists.

Defendant Naples testified that in his 50 years of employ as a crane operator, he has never seen an ironworker walk on the boom to insert pins to secure the jib extension.[3] He testified that he would have no reason to think someone was walking on the boom since he had never seen anyone

---

2. The parties presented conflicting testimony regarding the positioning of the jib extension at the time the pins had to be reinserted. The plaintiff and his witnesses testified that the jib extension was parallel with the ground and approximately six to ten feet in the air. Defendant Naples testified that the jib extension is never parallel with the ground when it is swung around the crane to insert the pins. He testified that the end of the jib extension was approximately one-inch from the ground, which is known as "jibbed down."

3. Defendant Naples formally became a member of his union in 1949 and was 82-years-old at the time of the plaintiff's accident. Defendant Naples testified that he did not have any health issues and had to receive a physical examination twice a year in order to maintain his license to operate a crane. He testified that he was never restricted to certain activities.

do it. Conversely, the plaintiff presented the testimony of Ensminger and another ironworker, Mr. Kevin Cain (hereinafter, "Cain"), who was working alongside the defendant when he fell, both of whom testified that ironworkers typically walked on the boom to insert pins in this way. Cain testified that he had climbed onto the boom to insert the pins into the jib extension approximate one thousand times. He and Ensminger also each testified that defendant Naples appeared to move the boom while the plaintiff was on top of it, which caused the plaintiff's fall. They also each testified that no one gave defendant Naples a signal to do so; rather, defendant Naples made an independent call to move the crane. Defendant Naples, however, denied this claim. Defendant Naples explained that while operating a crane, the operator's view is obstructed and he relies on signaling from ironworkers on the ground. He testified that he never moves the crane without receiving a signal. Defendant Naples also testified that he engaged the emergency brake and foot brake on the crane so it would have been impossible for him to move the crane at that point.

Although initially taken to Jameson Memorial Hospital by ambulance, the plaintiff was driven to another hospital in Pittsburgh to handle his immediate care. The plaintiff sustained a fracture in his left wrist and a tear in his right wrist. The plaintiff underwent three surgeries to his left wrist and now has decreased function and pain in his wrist. Additionally, the plaintiff provided the testimony of his father, Mr. Ronald Trott (hereinafter, "Trott"), regarding the length of the plaintiff's recovery. Trott testified that after the plaintiff's accident, the plaintiff had to move in with him for months so Trott could care for him and to

drive him wherever he needed.

This case was tried before a jury from February 10, 2014 through February 18, 2014. At the close of testimony, each party moved for a directed verdict as to the employment status of defendant Naples at the time of the accident. The court denied both. On February 18, 2014, the jury returned a verdict in favor of the defendants. The jury specifically found that defendant Naples was an employee of Sheraden Steel while working on the job site, which rendered both defendants immune from liability pursuant to the Worker's Compensation Act.

The plaintiff first argues that this court erred in failing to grant his motion for a directed verdict on the statutory employer issue. The plaintiff argues that the defendants failed to rebut the presumption that defendant Naples was an employee of defendant Lear at the time of the accident. Pursuant to the Worker's Compensation Act, "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer...in the same manner and to the same extent as to his own employe." 77 P.S. § 52. According to this section of the Workers' Compensation Act, "If [defendant Naples] was at the time of the accident an employee of [Sheraden Steel], then the Workmen's Compensation Act... furnished the exclusive method of securing compensation for [the plaintiff's] injury, and an action in trespass would not lie [against the defendants]." *Venezia v. Philadelphia Electric Co.*, 177 A.25, 26 (Pa. 1935) (internal brackets removed). If it is determined that defendant Naples was

employed by Sheraden Steel at the time of the accident, the plaintiff would, therefore, be prohibited from pursuing an action against his fellow employee, defendant Naples. "Where an employee's injury is compensable [under the Workers' Compensation Act], the exclusivity provision of the Act immunizes fellow employees from liability for their negligence." *Albright v. Fagan*, 671 A.2d 760, 762 (Pa. Super. 1996); 77 P.S. § 72. As the Pennsylvania Superior Court explained in *O'Donnell v. R.M. Shoemaker & Co.*, 816 A.2d 1159, 1163 (Pa. Super. 2003), "[t]he clear intent of the act is to provide the sole and exclusive means of recovery for injuries occurring within the scope of employment." 77 P.S. § 1.

The statutory employer is considered to be the entity who has control over the work of the borrowed employee, regardless of whether such control is actually exercised. When, as here, a company "is engaged in the business of renting out...cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master[.]" *Mature v. Angelo*, 97 A.2d 59, 60 (Pa. 1953). This presumption is only rebutted if evidence is presented to establish "that the borrowing employer *in fact* assumes control of the employe's *manner of performing the work*[.]" *Id.* (emphasis in original).

Other factors that may be considered by a court when determining whether a "statutory employer"/ "borrowed employee" relationship include the right to hire and fire the employee, the skill or expertise required of the employee, and the payment of wages. *JFC Temps, supra* at 864 (citing *Mature, supra* at 60; *Venezia*, 177 A. at 26. However, this list of factors is not exclusive nor are the

factors alone necessarily decisive; instead, courts must decide each case based on its specific factual scenario. *JFC Temps, supra* at 864.

The relevant facts regarding the employment of defendant Naples are not in dispute. Defendant Lear sent a crane operator, defendant Naples, along with the crane to the Neshannock job site pursuant to Sheraden Steel's rental agreement with defendant Lear. Defendant Lear had the exclusive right to choose which crane operator to send to the job site; however, Ensminger testified that he had a right to refuse an operator if he felt it to be necessary. Also, defendant Naples would contact defendant Lear if he could not report to the job site. Defendant Naples was the only person on the job site with the necessary skill to operate the crane, and he would arrive at the job site approximately one hour early to inspect the crane to ensure it would perform safely because it was his responsibility. Moreover, defendant Naples was hired on a daily basis and was paid by the hour and at a rate determined by defendant Lear.

The defendants presented the evidence that Sheraden Steel vis-a-vis Ensminger, as the foreman, controlled aspects of defendant's work. Ensminger determined when and where the workers would erect steel and when to engage the jib extension. Additionally, defendant Naples, as the crane operator, could not move the crane himself; crane operator's vision is obstructed inside the crane so. Out of necessity and safety, the operator must rely on the signals given to him from another person on the ground. Although defendant Naples manually operated the crane, the signals instructed defendant Naples when and where to move the crane, at what height to set the boom, and the

size of the load to move.

From a review of the relevant case law, it appears that which company controls an employee's operation while working on a job site is much more indicative of his statutory employer than the rate and the manner in which he is paid. The Supreme Court in *Venezia, supra,* and the Superior Court in *Ramondo v. Ramondo,* 82 A.2d 40 (Pa. Super. 1951), found that an employee's statutory employer while on a job site was the lesee company rather than the lessor company, from whom the employees had been leased. In each case, the courts considered the role of the foreman and his control over the borrowed employees to be indicative of the statutory employer. The court in *Ramondo* stated, "[T]he actual mechanical operation of the bulldozer is not decisive as to [the operator's] employment, and the fact that he was not actually on the [borrowing company's] payroll is insignificant. *Ramondo,* 82 A.2d at 41-42.

Here, the defendants presented evidence that is consistent with evidence that Pennsylvania appellate decisions have held to be sufficient to overcome the presumption discussed above. A question of fact will be found to exist even where the evidence is undisputed where there remains the consideration and weight of the evidence presented and what inferences are to drawn therefrom. As stated in *Mature,* "Where the facts are not in dispute, and the evidence leaves no sufficient ground for inconsistent inferences therefrom, the question as to who is the servant's employer is a matter for the determination of the court, but, where the evidence presents an issue of fact, or different inferences can reasonably be drawn therefrom, the question is one for determination by the

jury." *Mature*, 97 A.2d at 61. Here, it was for the jury to make the necessary inferences from the evidence. Therefore, as was properly within its purview, the jury determined that defendant Naples was employed by Sheradan Steel while on the job site. Based upon the above, this court did not err in denying the plaintiff's motion for a directed verdict on the statutory employer issue.

Next, the plaintiff argues that the court erred in failing to instruct the jury on 29 C.F.R § 1926.760 of OSHA, in determining the standard of care, or, at least, should have instructed on this regulation and § 1926.501, which the court gave, and leaving it to the jury to determine which applied. Initially, the court notes that this argument is moot because the jury did not reach this issue. Regardless, the court believes it did not err in its instruction to the jury. Both § 1926.501 and § 1926.76 provide mandates for providing fall protection to employees on a construction site. Section 501 provides, in relevant part, "Each employee on a walking/working surfact (horizontal and vertical surface) with an unprotected side or edge which is 6 feet...or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems." 29 C.F.R. § 1926.501(b). This subsection is located in Subpart M, which is entitled "fall protection." The subsection does not identify to which type of employee on a construction site it applies; rather, it is a blanket provision.

Section 1926.760 under Subpart R, entitled "Steel Erection" provides "each employee engaged in a steel erection activity who is on a walk/working surface with an unprotected side or edge more than 15 feet...above a lower level shall be protected from fall hazards by

guardrail systems" and other safety measures. 29 C.F.R. § 1926.760. Steel erection is defined as "the construction, alteration or repair of steel buildings, bridges and other structures, including the installation of metal decking and all planking used during the process of erection." 29 C.F.R. § 1926.751.

In the instant case, the plaintiff was installing a jib extension on a crane. Although this activity is not identified in any part of OSHA as controlling in 2003, the plaintiff argues that this activity should be considered to be steel erection activity as defined by subsection 1926.751. However, the plaintiff did not present any evidence in support of this contention. Conversely, the defendants presented the testimony of Mr. Peter Poczynok (hereinafter, "Poczynok"), a qualified OSHA expert. Poczynok testified unequivocally that in 2003, the OSHA regulation that would have applied to the plaintiff's activity is 29 C.F.R. § 1926.501. Poczynok testified that while walking on the boom to insert the pins, the plaintiff was in violation of subsection 1926.501 by failing to use fall protection. He further testified that based upon the description of the plaintiff's activity immediately prior to his fall, the plaintiff was engaged in "crane assembly," which does not fall within the definition of steel erection activity as defined in subsection 1926.751. Poczynok explained that subsection 1926.760 was intended to apply to "hoisting and rigging" activities. Poczynok also provided a number of different alternatives to insert pins to use a jib extension instead of walking on a boom. As stated above, the plaintiff presented no evidence in support of his contention that § 1926.760 was the applicable regulation on which to charge the jury. Based upon this, the plain language of

the regulations, and the testimony of Poczynok, the court found that § 1926.501 was the appropriate regulation at the time of the plaintiff's accident.

In the alternative, the plaintiff argues that the court should have instructed the jury on both sections of OSHA to permit the jury to determine the relevant regulation to apply. Both parties in the instant case sought to have the court instruct the jury on an OSHA regulation as evidence of the standard of care the plaintiff owed to himself. The courts in this Commonwealth have employed OSHA regulations as evidence of the standard of care. *See Brogley v. Chambersburg Eng'g Co.*, 452 A.2d 743 (Pa. Super. 1982). However, the court must first determine that a duty exists. *See Nertavich v. PPL Elec. Utilities*, --- A.3d --- (Pa. Super. 2014). Above what height fall protection should be utilized is a legal determination for purposes of this case, and the court instructed the jury on the OSHA regulation that applied. As a result, the court did not err in failing to instruct the jury on 29 C.F.R. § 1926.760. Based upon the foregoing, the plaintiff's appeal should be denied.

## ORDER OF COURT

And now, this 8th day of September, 2014, the court having received plaintiff's Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), with Douglas J. Olcott, Esquire, representing the plaintiff, and Mark A. Martini, Esquire, representing the defendants, the court hereby orders and decrees as follows:

1. To address the issues raised on appeal, the court issues the attached opinion pursuant to Pa.R.A.P. 1925(a).

2. The prothonotary shall properly serve notice of this order and attached opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the court's file.

